[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 5756
This is a dissolution of marriage action commenced by the plaintiff Catherine Granucci, who married the defendant Tarn Granucci on June 21, 1969. The two children of the marriage, Celeste and Tarn II, are now in their twenties.
Beginning in 1981, the parties became partners in a furniture business known as Strand Wayside Furniture in Wallingford. A prior business entity known as Strand, Inc., owned by defendant's father, had existed, but it was liquidated by defendant's father Harold Granucci in 1981. Harold Granucci helped the plaintiff and defendant get started in their new company by initially loaning them $400,000, most of which went to build their new store. This transaction and most subsequent ones between the parties and Harold Granucci were memorialized through notes and mortgages. Although Strand Wayside did well into the mid-1980s, the plaintiff and defendant were not skilled at long range planning. In the late 1980s and early 1990s, the business began to fail.
The parties attempted several strategies to salvage the store, including inventory reduction, a large promotion, an ongoing "warehouse sale", and changing various product lines. By 1994, despite cash raised through some of these strategies, it was clear that the business would have to be closed. Throughout their ownership of the business, the defendant's father Harold Granucci assisted them, occasionally working in the store, often lending them moral support and dispensing business advice, and sometimes lending them substantial amounts of cash. When the business finally closed in 1995, Harold Granucci helped them with a business workout which relieved them of certain personal liabilities on which they had obligated themselves and their real estate in connection with the business.
Rather than Harold Granucci's assistance garnering him any gratitude, especially from the plaintiff, his involvement generated suspicion and mistrust. In this action, the plaintiff claims that interference from her in-laws was a major factor in the breakdown of her marriage. She also claims that Harold Granucci has essentially conspired with the defendant to raid the assets of Strand Wayside for defendant's benefit so that there is no estate to divide in this dissolution action. The plaintiff's claims are without merit. CT Page 5757
As to the causes for the breakdown of the marriage, they were many. The parties both date their first serious problems beginning in 1988. Each was working long hours to make their business a success. The plaintiff often felt she was carrying the heavier burden of running both the business and the household. The plaintiff began drinking heavily. On many evenings, the plaintiff was so drunk that the defendant would have to help her to bed. At other times her anger, even when she was not drinking, overwhelmed her to the point that she would smash objects, swear at the defendant, and physically assault him. The defendant's response was to become withdrawn and uncommunicative which enraged the plaintiff. Her drinking eventually led to her hospitalization at Gaylord Hospital and subsequent outpatient rehabilitation for alcohol abuse. Meanwhile both of the children, though nearly grown, were experiencing emotional difficulties which led to further stress within the family; and the business was failing, adding to the pressure.
As early as December 1990, the plaintiff stated to their marriage counselor[1] that she no longer had feelings for the defendant. They nonetheless continued to share the same household until two events in the Spring of 1995. The first was a sexual affair that the defendant had with an female acquaintance. When the plaintiff learned of this, she became very distressed, so much so that the parties' marriage counselor feared that the plaintiff might harm herself. The second event was a physical assault on the plaintiff by the defendant, the first time and fortunately the last time in the many long and stressful years of the marriage that he had ever been violent to her. The police were called and the defendant left the family home. They have resided separately ever since.
All of these events contributed to the breakdown of the marriage. The court does not assign one factor more than others as the cause. The court does not assign to one party or the other the primary responsibility for the breakdown.
As to the plaintiff's allegation that, to her exclusion, the defendant and his father "looted" the business, the evidence in no way supports such a claim. The plaintiff was aware of and had access to all business records during the time before Strand Wayside finally closed its doors. She made a decision for her own mental health and personal development not to work any longer in the business after 1992, but she was still involved in the flow of information, notwithstanding her claims to the contrary. She CT Page 5758 still balanced the defendant's personal checkbook until early 1995.
Also her attempt to portray the often disorganized bookkeeping practices of Strand Wayside as evidence of some wrongdoing by the defendant and his father has been unavailing. Joseph Marenna who was retained as the new accountant for the parties and for Strand Wayside in 1992 began the process of putting the records in order and bringing the accounting of the business into compliance with proper accounting procedures. Nothing in his testimony, however, is probative of any unlawful or fraudulent activity. Nor does the testimony of other witnesses who paid cash for merchandise or who bought certain inventory items at below their retail value establish anything other than that both the plaintiff and the defendant were poor business persons.
In fact the testimony of the plaintiff, the defendant, and Harold Granucci, and the documents such as tax returns that relate to their testimony all support the fact that while the business loaned money to its officers, who were the plaintiff and the defendant, it did so in a way that was eventually fully documented in the corporate books, that helped the family unit live beyond its means, that resulted in part in the failure of the business, and that was not more favorable to the defendant than it was to the plaintiff. The parties may yet have to account to some tax authority for any failure to properly report certain benefits they received from the business, such as loans to officers, but as between each other, the court is satisfied that neither of them took advantage of the other in any way in the winding down of the corporation.
The parties now are living separately and have in some ways separated their finances. Each is good health. Each is employed, the plaintiff currently at a higher wage than the defendant. During the course of the marriage, both worked and had comparable benefits from the running of the business. Neither was economically dependent on the other. This is not a case where an award of alimony is either necessary or equitable.
Certain orders are necessary and equitable under Con. Gen. Stat. Sec. 46b-81 in order to continue to disentangle the parties from one another financially once and for all. Also the parties preserved to the time of this trial their motions, filed in April 1996, for modification of alimony (filed by the defendant) and CT Page 5759 for contempt for failing to pay the full alimony order (filed by the plaintiff). Therefore the court orders as follows:
1. The court, finding that it has jurisdiction, finds that the marriage has broken down irretrievably and enters a decree dissolving the marriage.
2. There shall be no alimony to either party.
3. The jointly owned real property known as 7 Old Gate Road, Wallingford, CT, shall be promptly placed on the market and sold. After payment of the mortgage, the debt of approximately $53,000 to Harold Granucci, the current and past due real estate taxes to the Town of Wallingford, the usual closing costs, the security deposit owed to the former tenants of 1161 South Broad Street, and the balance of the Visa and Mastercard accounts shown on the defendant's financial affidavit of October 17, 1996, any net proceeds shall be divided equally between the plaintiff and the defendant. Any deficiency shall be born equally by the defendant and the plaintiff. Until such time as the property is sold, the plaintiff shall be entitled to exclusive use. She shall be responsible for all expenses in connection with her occupancy of the property including payment of the mortgage, taxes, utilities, insurance and the like and hold the defendant harmless from any such responsibility. The defendant's responsibility for certain expenses of the property as a result of the pendente lite order of October 11, 1995, to the date of this order is not relieved by the modification order in Paragraph 7.
4. The plaintiff shall transfer all her stock in Strand Wayside, Inc., to the defendant forthwith and shall contemporaneously resign as an officer and director. She shall assign to the defendant any inchoate claims she may have against the corporation. The defendant shall be liable for all debt of said corporation that is or may be found to be personal to the plaintiff and defendant and shall indemnify and hold the plaintiff harmless thereon. To the extent that the plaintiff and the defendant may be held personally liable for any tax deficiency as a result of underreporting income or realizing gain as a result of compensation, benefits, or payments from the corporation or from the WAMCO workout, the defendant shall be responsible for such deficiency and shall hold the plaintiff harmless.
5. As to items of tangible personal property, the defendant CT Page 5760 shall be entitled to own as his sole property all items circled on Defendant's Exhibit 14, and the Elliot Grandfather clock and all rugs. He shall be entitled to enter the premises to remove those items upon reasonable notice to the defendant.
6. The defendant shall transfer from his IRA accounts by Qualified Domestic Relations Order to the plaintiff the sum of $19,000, such that the transfer does not create a taxable event.
7. The court finds a change of circumstances, effective April 16, 1996, and modifies the pendente alimony order to $200 per month retroactive to that date. The court retains jurisdiction to determine any pendente lite arrearage that the parties cannot agree upon on their own, or to enter orders relative to recoupment by the defendant from the plaintiff of any overpayments occasioned by this modification or by the finding and order in Paragraph 3. The court declines to find the defendant in contempt.
8. The property known as 1161 South Broad Street, Wallingford, CT, is awarded to the defendant together with its contents, free of any claim or demand by the plaintiff. The defendant shall be responsible for and shall hold the plaintiff harmless from the mortgage, taxes, utilities, and all other payments in connection with that property. Further, he shall use his best efforts to promptly remove her name as an obligor on all such liabilities in connection with the property.
9. The automobile currently in the possession of each party shall remain the property of that party free and clear of any claim or demand by the other.
Patty Jenkins Pittman, Judge